**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
CEOLA WILLIAMS and NICHOLE CHAN,

                            Plaintiffs,

       -against-

GLOBAL SECURITY SOLUTIONS, INC.
and NEIGHBORHOOD ASSOCIATION FOR
INTER-CULTURAL AFFAIRS, INC. a/k/a
N.A.I.C.A., INC.,

                           Defendants.
------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiffs CEOLA WILLIAMS and NICHOLE CHAN ("Plaintiffs"), by their attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complain of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 et seq. ("NYCHRL"), and seek damages to redress the injuries they have suffered as a result of **being sexually harassed, discriminated, and retaliated against on the basis of their sex/gender (female), resulting in Plaintiffs suffering a hostile work environment and adverse employment actions, including, ultimately, their termination.**

2. Plaintiffs were subjected to a hostile work environment filled with sexually harassing behavior and inappropriate sexual touching by a Manager of Defendant NEIGHBORHOOD ASSOCIATION FOR INTER-CULTURAL AFFAIRS, INC. a/k/a

1

N.A.I.C.A., INC. at the work location where Plaintiffs were stationed. Despite Plaintiffs' multiple complaints to both Defendants, no action was taken to stop the continuous sexual harassment.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over the claims that Plaintiffs have brought under State and City law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York or the acts complained of occurred therein.

6. By: (a) timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2020; (b) receiving Notices of Right to Sue from the EEOC on November 10, 2020; (c) commencing this action within 90 days of the issuance of the Notices of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiffs have satisfied all of the procedural prerequisites for the commencement of the instant action. Copies of the Notices of Right to Sue are annexed hereto as "Exhibit A;" a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as "Exhibit B."

## PARTIES

7. At all relevant times, Plaintiff CEOLA WILLIAMS ("WILLIAMS") was and is a female individual, residing in the State of New York, Bronx County.

8. At all relevant times, Plaintiff NICHOLE CHAN ("CHAN") was and is a female


individual, residing in the State of New York, Bronx County.

9. Plaintiffs WILLIAMS and CHAN are collectively referred to as "Plaintiffs."

10. Upon information and belief, Defendant GLOBAL SECURITY SOLUTIONS, INC. ("GLOBAL SECURITY") is a domestic business corporation registered to do business in New York State. Defendant GLOBAL SECURITY maintains a principle place of business at 152 West 36th Street, Suite# 305 New York, New York, 10018.

11. At all relevant times, Defendant GLOBAL SECURITY employed at least 15 employees.

12. At all relevant times, Defendant GLOBAL SECURITY was an "employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

13. Upon information and belief, Defendant NEIGHBORHOOD ASSOCIATION FOR INTER-CULTURAL AFFAIRS, INC. a/k/a N.A.I.C.A., INC. ("N.A.I.C.A.") is a domestic not-for-profit Corporation registered to do business in New York State. Defendant N.A.I.C.A. operates homeless shelters in New York City.

14. At all relevant times, Defendant N.A.I.C.A. employed at least 15 employees.

15. At all relevant times, Defendant N.A.I.C.A. was an "employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

16. Defendants GLOBAL SECURITY and N.A.I.C.A. are joint employers for purposes of this action. As such, there are commonalities in hiring, firing, discipline, pay, insurance, records, and supervision.

17. While Defendant GLOBAL SECURITY set Plaintiffs' schedules and paid Plaintiffs, Defendant N.A.I.C.A. controlled Plaintiffs' work tasks and work conditions, could discipline Plaintiffs, and could otherwise affect Plaintiffs' conditions of employment, including terminating them.

18. Defendants GLOBAL SECURITY and N.A.I.C.A. are collectively referred to as

"Defendants."

## MATERIAL FACTS

19. In or around March 2019, Plaintiff CHAN began working for Defendant GLOBAL SECURITY as a "Lead Security Officer."

20. Plaintiff CHAN worked about 40 hours per week and earned $16.50 per hour.

21. In or around July 2019, Plaintiff WILLIAMS began working for Defendant GLOBAL SECURITY as a "Security Officer." Plaintiff WILLIAMS worked for Defendant GLOBAL SECURITY until in or around the end of August 2019 and restarted working for the company in or around January 2020 until she was unlawfully terminated on or about April 7, 2020.

22. Before her unlawful termination, Plaintiff WILLIAMS worked about 40 hours per week and her expected salary for 2020 was approximately $33,280.00.

23. Throughout their employment, Plaintiffs were above-satisfactory employees and were otherwise qualified to perform their work duties.

24. Plaintiffs were placed to work at the Casa de Cariño/ House of Love Transitional Housing Shelter in the Bronx, which is operated by Defendant N.A.I.C.A.

25. Starting in or around March 2020, Plaintiffs were subjected to a hostile work environment filled with sexually harassing behavior and inappropriate sexual touching.

26. Specifically, a few days after Nelson (Last Name Unknown) started working as a Manager at the Shelter where Plaintiffs were stationed, he started making inappropriate sexual comments, propositioned Plaintiff WILLIAMS for sex, and touched Plaintiffs inappropriately without their consent.

27. At all relevant times, Nelson was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs. Nelson had the authority to hire, fire, affect the terms and conditions of

Plaintiffs' employment, or influence the decisionmaker of same.

28. **Upon information and belief, Nelson had been transferred to the Shelter, which was a female-only shelter, where Plaintiffs worked after he was accused of sexual harassment at his prior work location of Defendant N.A.I.C.A.**

29. Nelson immediately started approaching and following Plaintiffs around when they were working and made continuous efforts to initiate conversation with them in a flirtatious manner that made both of them feel very uncomfortable.

30. Nelson would also continuously inappropriately stare at Plaintiffs who constantly felt that he was watching them.

31. Nelson would frequently ask Plaintiff WILLIAMS, **"What kind of panties you got on?"** and **"What color panties you got on?"** making her feel extremely uncomfortable.

32. Nelson also told Plaintiff WILLIAMS that he liked it when she had her hair and nails done, that he could pay for her to get her hair and nails done, and that he could **"look out for [her]"** and **""give [her] cash,"** all while showing her his bank accounts to prove his ability to pay for her, making her feel extremely uncomfortable and degraded. Nelson also complimented Plaintiff CHAN's hair.

33. **On a continuous basis, Nelson propositioned Plaintiff WILLIAMS for sex and stated, "I know it's going to be perfect. You're the right type and size and color," implying that having sex would be "perfect." Nelson would also state, "I have a wife … I like to keep things discreet."**

34. Plaintiff WILLIAMS rejected all of Nelson's propositions for sex and made it clear that she was not interested in any sexual relationship with him.

35. Despite Plaintiff WILLIAMS' rejections, Nelson continued to proposition her, making her feel extremely uncomfortable.

36. Nelson also got hold of Plaintiff WILLIAMS' phone number despite the fact that Plaintiff WILLIAMS never gave it to her. On or about March 23, 2020, Nelson started sending Plaintiff WILLIAMS inappropriate messages, including asking her if she was a **"freak,"** which Plaintiff WILLIAMS understood to be related to her sexuality.

37. Despite Plaintiff WILLIAMS telling him that he was starting to be "annoying," Nelson continued texting Plaintiff WILLIAMS and making inappropriate comments, **including asking Plaintiff WILLIAMS what she was wearing and to send him pictures of herself.**

38. Plaintiff WILLIAMS simply stated that she was wearing a t-shirt and shorts. Nelson then responded, **"Nice easy 2 get 2 da puss."**

39. On or about March 24, 2020, Nelson was text messaging Plaintiff WILLIAMS while she was working, asking her to **"cum here,"** again sexualizing the conversation. Plaintiff WILLIAMS did not respond.

40. Later in the day, Nelson again tried to initiate conversation via text, but Plaintiff WILLIAMS did not respond, in hopes that he would leave her alone.

41. **The sexual harassment of Plaintiff WILLIAMS intensified when Nelson grabbed Plaintiff WILLIAMS' buttocks in the staff lounge after stating "I just want to touch it, it looks so soft" and when on about three separate occasions he brushed his penis against Plaintiff WILLIAMS backside while she was escorting him around the Shelter.**

42. Plaintiffs felt extremely uncomfortable, humiliated, and objectified by Nelson's physical and verbal sexual harassment.

43. On or about March 25, 2020, right after Nelson had grabbed Plaintiff WILLIAMS' buttocks, Plaintiff WILLIAMS complained about the sexual harassment that she had been

6

experiencing to Caesar (Last Name Unknown), who was an Account Manager for Defendant GLOBAL SECURITY.

44. At all relevant times, Caesar was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs. Caesar had the authority to hire, fire, affect the terms and conditions of Plaintiffs' employment, or influence the decisionmaker of same.

45. Plaintiff WILLIAMS detailed the sexually inappropriate comments that Nelson had been continuously making, the fact that he had grabbed her buttocks, as well as that he had gotten access to her phone number without her permission.

46. To Plaintiff WILLIAMS' disbelief, Caesar stated that Plaintiff WILLIAMS could not make a statement about the sexual harassment unless there was another person who Nelson was sexually harassing. Caesar repeated that they needed "more than one person" to come forward against Nelson before taking any action against him.

47. Plaintiff WILLIAMS understood Caesar's statement to imply that Defendant GLOBAL SECURITY did not take sexual harassment seriously and that there was no effective discrimination or sexual harassment policy in place.

48. Around this time, Nelson requested that Plaintiff CHAN accompany him while he checked the temperature of the rooms in the Shelter. **During this process, Nelson brushed against Plaintiff CHAN's breasts with his right hand and a few minutes later brushed against Plaintiff CHAN's backside and buttocks with his penis making her feel extremely uncomfortable and violated.**

49. Plaintiff CHAN complained to her supervisor, Caesar, on at least three separate occasions about Nelson's sexually harassing conduct towards herself, Plaintiff WILLIAMS, and other female employees that had also been victims of Nelson's inappropriate conduct. While Caesar told her that he would speak to the Shelter, nothing was being done to remedy

7

the hostile work environment by any of the Defendants.

50. Plaintiff CHAN also complained about the sexual harassment to Maria Del Carmen Martir ("Del Carmen Martir"), the Director of Operations at Defendant N.A.I.C.A.

51. At all relevant times, Del Carmen Martir was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs. Del Carmen Martir had the authority to hire, fire, affect the terms and conditions of Plaintiffs' employment, or influence the decisionmaker of same.

52. Del Carmen Martir was also Nelson's supervisor and/or had supervisory authority over him.

53. However, Del Carmen Martir would either dismiss or ignore any complaints of harassment and never took any action to remedy the hostile work environment.

54. Soon after Plaintiffs' complaints, Plaintiffs started receiving write-ups from Nelson and Del Carmen Martir, which Plaintiffs perceived to be in retaliation for them having complained about the sexual harassment merely a few days prior. Plaintiffs were not handed any of the write-ups and were only informed about them by Caesar.

55. On or about April 6, 2020, Nelson again text messaged Plaintiff WILLIAMS if she wanted to **"cum out,"** again making Plaintiff feel extremely uncomfortable. Plaintiff WILLIAMS confronted Nelson and in exasperation told him, "Do you know how it feels to be sexually harassed? To be followed around? To be treated like shit because you don't want to sleep with certain people?"

56. That same day, Plaintiff WILLIAMS called Caesar to again complain about Nelson sexually harassing her. As Caesar did not appear to be taking her complaints seriously, after their call Plaintiff WILLIAMS text messaged him that this would be the last week of her working for Defendant GLOBAL SECURITY, effectively being constructively discharged due to the ongoing hostile work environment caused by the sexual harassment

that she had been experiencing in the hands of Nelson.

57. The following day, on or about April 7, 2020, Caesar told Plaintiffs that Del Carmen Martir had told him that she did not want Plaintiffs working at the Shelter anymore and that they were being terminated effective immediately, allegedly due to their alleged frequent use of the bathroom.

58. Plaintiffs' termination was clearly pretextual, in retaliation for their complaints of sexual harassment.

59. About two weeks after Plaintiffs' termination, Plaintiffs received a call from Werner Hellmann ("Hellmann"), the Chief Executive Officer of Defendant GLOBAL SECURITY, who apologized for the sexual harassment, told Plaintiffs that they were "not fired," and prompted Plaintiffs to call Caesar to set up a work schedule. Based on their conversation, Plaintiffs were under the impression that Nelson would be terminated for his actions.

60. Upon information and belief, up to that point, Nelson's actions were not investigated and/or reprimanded in any way despite Plaintiffs' multiple complaints. Defendants thereby acquiesced to the sexual harassment that Plaintiffs had been experiencing.

61. Upon information and belief, other female employees had also complained about Nelson sexually harassing them and they had also been terminated.

62. Around that time, Hellmann facilitated a meeting between the Human Resources Department of Defendant N.A.I.C.A. and Plaintiffs.

63. On or about April 27, 2020, Plaintiffs separately met with three representatives of Defendant N.A.I.C.A. and again detailed the sexual harassment that they had been experiencing. No representative of Defendant GLOBAL SECURITY participated in the meeting.

64. Believing that Nelson would not be returning to work, both Plaintiffs returned to work on

or about April 27, 2020.

65. However, upon information and belief, Nelson remained employed until he resigned from his position on or about May 18, 2020.

66. In fact, on or about May 4, 2020, Nelson appeared at the work site where Plaintiffs were scheduled to work that day, making both of them feel extremely unsafe and uncomfortable especially because Plaintiff CHAN had to physically search him before he entered the property as part of her work duties, which made her feel extremely uncomfortable.

67. Later that day, Plaintiff WILLIAMS called Hellmann to inform him that Nelson had been there that day, making them feel extremely uncomfortable.

68. From the day that Plaintiff CHAN returned to work until on or about May 14, 2020, Plaintiff CHAN was not put back on her regular schedule and was only scheduled to work about two days per week.

69. On or about May 14, 2020, Plaintiff CHAN could not endure working for the Defendants any longer and resigned. Plaintiff CHAN was thereby constructively discharged by the Defendants.

70. The following week, Plaintiff WILLIAMS asked the Human Resources department of Defendant N.A.I.C.A. if Nelson was still working for Defendant N.A.I.C.A. and was told that they were still investigating the matter.

71. Plaintiff WILLIAMS worked for Defendants until on or about May 23, 2020 when Defendant N.A.I.C.A. took Plaintiff WILLIAMS off the work schedule after she complained about a safety measure being violated at her workstation.

72. Plaintiff WILLIAMS complained of her being removed from the work schedule being retaliatory but as of May 29, 2020 she has not been added back on the schedule and the only work alternative that Defendant GLOBAL SECURITY has offered is at an extremely

inconvenient location for Plaintiff WILLIAMS.

73. Defendants condoned, supported, ratified, and furthered the discriminatory and hostile conduct by Nelson.

74. Defendants maintained an unlawfully hostile and intimidating work environment, which unreasonably interfered with Plaintiffs' employment.

75. Despite Plaintiffs' complaints, Defendants failed to sufficiently investigate the allegations and to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment.

76. Defendants willingly ignored their obligations to prevent discrimination in the workplace - to the detriment of Plaintiffs.

77. Defendants' lack of action demonstrated that Defendants were acquiescing to the discrimination.

78. **Plaintiffs were treated differently by Defendants solely due to their sex/gender (female).**

79. But for the fact Plaintiffs are female, Defendants would not have treated them disparately.

80. Plaintiffs were terminated because of their gender/sex and in retaliation for engaging in protected activities.

81. Defendants, their employees, agents, representatives and/or subordinates had no good faith business justification for their individual and collective actions against Plaintiffs.

82. Plaintiffs have been unlawfully discriminated against, humiliated, degraded, and belittled, and as a result, suffers a loss of rights, emotional distress, and a loss of income and earnings.

83. Defendants' actions and conduct were unsolicited, unwelcome, offensive, intentional, and intended to harm Plaintiffs.

84. As a result of the acts and conduct complained of herein, Plaintiffs have suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

85. As a result of the above, Plaintiffs have been damaged in an amount which exceeds the jurisdictional limits of the Court.

86. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiffs demand punitive damages against both Defendants jointly and severally.

### AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII

87. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

88. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, for relief based upon the unlawful employment practices of the Defendants.

89. Plaintiffs complain of the Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's **sex**.

90. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e *et seq.*, by discriminating against Plaintiffs because of their sex (female).

### AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII

91. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

92. Title VII, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because he has opposed any

practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

93. Defendants engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

94. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

95. Executive Law § 296 provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, **sex,** disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

96. Defendants discriminated against Plaintiffs in violation of the NYSHRL by subjecting Plaintiffs to a hostile work environment because of their sex/gender (female).

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

97. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

98. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

99. Defendants engaged in unlawful discriminatory practices by retaliating against Plaintiffs

because of their opposition to the unlawful employment practices of the Defendants.

## AS A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

100. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

101. The New York City Administrative Code § 8-107(1) provides that it shall be unlawful

> (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person… to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

102. Defendants discriminated against Plaintiffs in violation of the NYCHRL by subjecting Plaintiffs to a hostile work environment because of their sex/gender (female).

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

103. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint.

104. The New York City Administrative Code § 8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

105. Defendants engaged in unlawful discriminatory practices by retaliating against Plaintiffs because of their opposition to the unlawful employment practices of the Defendants.

## JURY DEMAND

106. Plaintiffs request a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL in that Defendants discriminated and retaliated against Plaintiffs on the basis of their gender/sex (female), together with sexual harassment, creating a hostile work environment, and ultimately unlawfully terminating them;

B. Enjoining Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C. Awarding damages to Plaintiffs for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful discriminatory and retaliatory practices and to otherwise make her whole for any losses as a result of such unlawful employment practices;

D. Awarding Plaintiffs compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiffs' reputation in an amount to be proven;

E. Awarding Plaintiffs punitive damages;

F. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action, and pre-judgment and post-judgment interest; and

G. Awarding Plaintiffs such other and further legal and equitable relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
November 23, 2020

                                      PHILLIPS & ASSOCIATES,
                                      ATTORNEYS AT LAW, PLLC

By: _____
Brittany A. Stevens, Esq.
Janelle J. Romero, Esq.
*Attorneys for Plaintiffs*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
bstevens@tpglaws.com
jromero@tpglaws.com